BOWLING, Justice,
for the Court:
Appellant Marsha Hinton filed suit against appellees, Hydraulic Pumps, Inc. and Raymond Lawrence, alleging a cause of action for the death of appellant’s male child. There was a jury verdict for the defendants and appellant appeals.
Appellee, Raymond Lawrence, was the operator of a truck and trailer, (an 18-wheel tractor-trailer), owned by the appellee, Hydraulic Pumps, Inc. The truck was involved in a collision with a car operated by appellant, Marsha Hinton. At the time appellant was pregnant with the child which was either a few days over-due in arriving or due about the date of the collision. The child died about two hours after Ceasarean delivery.
The collision occurred in Jasper County, Mississippi, at the intersection of State Highway No. 537 and an unnumbered road known as the Heidelberg-Moss Road. Immediately prior to where the roads joined, Highway No. 537 ran in northerly-southerly directions. Appellant was traveling north and was going to have dinner with her mother and step-father, who lived a short distance beyond the intersection.
Prior to reaching the intersection, the Heidelberg-Moss Road ran in easterly-westerly directions. Appellee’s truck was being operated in a westerly direction and turning south on Highway 537 to proceed on that highway in the opposite direction from that appellant was traveling. The place where the two roads came together is what is commonly known as a “Y” intersection. The Heidelberg-Moss Road made a sweeping curve to the south at the intersection with Highway 537. A vehicle proceeding in a westerly direction on the Heidelberg-Moss Road would either turn south on Highway 537 or north-west on that highway, depending on the vehicle’s destination.
On the occasion of the collision, appellee, Raymond Lawrence, was driving a vehicle in the area for the first time. He was in contact by radio with the office of his employer, Hydraulic Pumps, Inc., which was engaged in a business incidental to oil field operations. As the truck approached the intersection, Lawrence received directions by radio to turn to the left and go south on Highway 537. Admittedly, he had negotiated either all or practically all of the curve when the truck collided head-on with appellant’s vehicle proceeding north.
As stated, appellant was traveling from the Moss community, the intended destination of appellee’s truck. Appellant testified she was on the proper side of the road traveling approximately fifteen miles per hour. Appellee Raymond Lawrence testified that as he started around the curve to his left, he removed his foot from the truck’s accelerator, but did not apply his brakes. His testimony was that as he got around the curve, he saw appellant’s vehicle just as the vehicles collided and then the truck driver applied his brakes for the first time, with the wheels locking. With the vehicles head to head, appellant’s vehicle *1009 was pushed back approximately 70 feet. There was extensive damage to the front of appellant’s vehicle, including a bent steering wheel and a broken windshield, where it had been struck by appellant’s head.
Several assignments of error are propounded. We are convinced, however, that one assignment requires reversal and there is no need to discuss the others, as a new trial would probably change the picture. Appellant requested the lower court to charge the jury that the driver of the truck, appellee Raymond Lawrence, was negligent. After carefully studying the record, including many photographs, we are convinced that no court or jury could logically find that appellee, Raymond Lawrence, was free of negligence and the jury should have been so instructed. The truck-trailer of appellee was around 50 feet long. Admittedly, a large part of the trailer was still on the east or north-bound lane of Highway 537 after it had pushed appellant’s car back approximately 70 feet, although appellant’s car ended up at the edge of the southbound lane of travel of the highway. Appellee weakly contends that appellant was on the wrong side of the highway. The pictures show straight skid marks left by the truck and trailer and these started on the eastern side or the northbound lane of travel. As stated, the driver admitted without contradiction that he did not see appellant’s vehicle until the instant of the collision. It was approximately five o’clock p.m. and daylight at the time of the collision.
Appellee, Raymond Lawrence, testified that he could not give any estimate of the speed of appellant’s car, as he did not see it in time. He also admitted that he could not testify as to which side of the highway appellant’s vehicle was on at the time of the collision. As stated, appellant positively said she was on the proper side of the highway when the truck suddenly came around the curve proceeding in her lane of travel. The photographs showing the skid marks bear this out.
As hereinbefore stated, we are of the opinion that neither a court nor a jury could logically make a determination that appel-lee Lawrence, while acting for his employer in the operation of the truck and trailer, was not negligent. We find that the events overwhelmingly show that he was negligent and that negligence at least contributed to the collision. The jury should have been so instructed as requested by appellant.
Appellant was a woman, 26 years of age, who had been examined and her physical condition followed closely by her physician. Her pregnancy had been uneventful and there had been no difficulty whatever until the approximate time for the child’s birth, which was, as hereinbefore stated, around the date of the collision. The collision was obviously with great force, as evidenced by the condition of appellant’s vehicle. The appellant received a broken knee, her head hit and cracked the windshield, and the steering wheel was badly bent. After the crash, while lying on the ground near the scene and waiting for an ambulance, appellant called to the attention of her husband, who had arrived, that the baby was no longer moving as it had been doing immediately prior to the collision. Appellant was carried promptly to the hospital where she was seen by her physician, who knew all about her condition, having monitored her pregnancy up until the day in question. Later in the evening, he found the child’s fetal heart tone to be well below normal and decided to immediately perform a Ceas-arean operation. This was done and the child was found to be blue and in a bad physical condition. He died approximately two hours later, after being treated the entire time by a reputable pediatrician. Both of these professional men were on the scene at the hospital the entire time and were of the opinion that the motor vehicle collision caused the death of the child. We shall not discuss the medical testimony in detail, as other developments might occur at a new trial. We feel obligated to mention briefly appellee’s evidence in opposition to the two experts who were well acquainted with the appellant’s pregnancy and the sequence of events which preceded the death of the child and who had a positive opinion as to the cause of death, explaining that in detail. In opposition to this appellee *1010 introduced a professor from the Louisiana State University Medical School. We will not go into detail as to his testimony, except one of his conclusions to the effect that he could not say the collision caused the child’s death, as infants occasionally die soon after delivery when there has not been any recent physical trauma. His opinion was that he found that five percent of babies were born in such a condition when born after the mother went into labor. In the case of appellant, she was not in labor, but the child was delivered by Ceasarean section because of complications found by her attending physician after the collision. Although we are not reversing the case on a possible jury finding that the collision did not contribute to the death of appellant’s child, we are constrained to say that a detailed study of the evidence given by the various physicians leaves us thinking that a jury finding of lack of causation strains credulity. We do not know whether the jury based its decision on a lack of negligence on the part of the truck driver or that the collision did not contribute to the baby’s death. Our reversal is based on the jury’s possible finding of no negligence on the part of the truck driver. The jury should have been instructed that the truck driver was negligent. This failure was clearly erroneous, and unless the picture of the cause changes drastically on retrial, appellant will be entitled to an instruction that the truck driver was negligent.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.